*Hord* for plaintiff; *J. & W. L. Harlan* for defendant.

---

CHANCERY.

# Arnold's Heirs, &c. *vs* Arnold's Administrator, &c.

*Case 52.*

### ERROR TO THE GARRARD CIRCUIT.

*Wills. Devises. Remainder. Dower. Advancements. Fraud.*

*January 15.*

JUDGE SIMPSON delivered the opinion of the Court.

THE last will and testament of John Arnold, deceased, contains the following clauses:

The provisions of John Arnold's will.

"It is my will and desire, after my death, and that of my wife, that my son, William W. Arnold, who has been living with me for some years, and who has been laboring faithfully, to assist me during that period, should have the plantation upon which I now reside, containing about three hundred acres of land, be the same more or less.

"It is my desire also, that my son should remain with me during my life, and during the life of his mother, (should she survive me,) for the purpose of taking care of both, as long as we live, and superintending the farm and all my business, in consideration of which, he is to have one third of all that is made upon the place, after supporting the family, until the death of myself and

wife. And if he thinks proper to marry or settle himself before my death, or that of his mother, he is at liberty to build a house on any part of the place, and live in the same, and though he is to be considered the owner and proprietor of the place at my death, yet he is not to·have the exclusive possession of it, or the dwelling house in which the family lives, until after the death of his mother, but he·is to be permitted, as before stated, to cultivate the place and manage the· business during the life of his mother, and is to have one third of the proceeds.

"2nd.·I will and devise to my wife, the use of the plantation upon which I reside, during her life, to be under the management of my son, William W. Arnold,. upon the terms and conditions already expressed and set forth."

After the death of the testator, William W. Arnold married. He died without children, and his wife and his mother are still living. Two questions are made upon the will.: First; Having died before his mother, did he acquire any interest in the land? Secondly; Is his widow entitled to dower?

It is contended his right was conditional, depending on the performance of the prescribed· service, in taking care of his father and mother during their lives; and having died before his mother, he acquired no interest in the land under the will. There is no foundation for this assumption, nor is it authorized by any thing contained in the will. The land was not devised to him as a compensation for this service. It was devised to him absolutely and unconditionally, after the death of his mother. For these services he had a right to one third of the profits made upon the plantation, after· defraying the expenses of the family. This right ceased of course, upon his death; but upon the death of the testator he took a vested interest in the land, not depending for its duration, upon any contingency, and subject only to the life estate of his mother.

The other question is one of more difficulty.· Its solution depends upon the extent of his mother's life estate. The use of the plantation is expressly devised to·

A devise of a' tract of land to the son of the testator, reserving a life estate to his wife, with a request or the expression of a desire that the son should remain with the· testator and his wife upon the land, and take care of them and the longest liver of them, and have one third of the profits of the farm, is not a conditional devise in fee, but an absolute vested interest upon the death of ,he· testator, subject to the life estate· of the mother.

—And in such case the devisee's right to one third of the pro-

ARNOLD'S HEIRS,
&c.
*vs*
ARNOLD'S AD'R.
&c.

fits of the farm
ceased upon his
death before his
mother, but the
remainder passes
to his heirs.

her during her life. That she had a life estate no doubt can arise. Whether under the other provisions of the will, this life estate includes the whole plantation, is the only point that admits of debate. The language of the will, it is true, imports that the plantation was to belong to William at the death of the testator; "he was to be considered the owner and proprietor of the place." But all the provisions of the will must be considered in arriving at its true construction. The testator gives the use of the plantation to his wife during her life, to be under the management of his son William, upon the terms and conditions expressed in the will. What were those terms and conditions? He had liberty to build a house on any part of the place and live in the same, if he married; and was permitted to cultivate the land and manage the business during the life of his mother, and have one third of the proceeds. The substance of it all is, that the farm belonged to his mother during her life, with a right on his part derived under the will, to manage it for her, for which service, one third of the profits belonged to him. If he had an immediate interest in the land on the death of his father, where does that interest go on his own death? It is evident, upon his death, the whole tract belongs to his mother during her life, and she became entitled to the whole of the profits instead of two thirds. His right under the will, during his mother's life, was a mere personal privilege, based on the performance of services which he alone could render, and terminating at the time of his death.

The tenant in fee
in a remainder,
who has not been
seized, has not
such estate and
seizen as ena-
bles his wife to
have dower in
the estate.

Our construction then of the will is, that the mother of William W. Arnold takes under it, a life estate, subject alone to the right of her son during his life, to manage it for her, and receive one third of the profits as a compensation; and that he took an estate in fee in remainder, after the termination of his mother's life estate. Consequently, not being seized or lawfully possessed in his own right during coverture, his wife has no right to be endowed of one third, or of any other part of this land.

The case of *Robinson* vs *Miller*, (2 *B. Monroe*, 284,) is relied upon as authorizing the claim of dower in this

case. The two cases are entirely dissimilar. `There the testator left to his wife her thirds of the place he lived on, and devised the farm to his son absolutely. It was held, his widow took no interest in the land under the will. That all the testator intended was, that she should have her dower in the land, and the son the immediate fee, subject to the claim of dower, just as it would have been had it descended instead of being devised. The son having entered into the possession and he and his mother having lived together during his life, the claim of his wife to dower in the entire tract, after his death and the death of his mother, was sustained. Here, however, there is an unequivocal and express devise of the use of the land to the mother during life. She certainly takes an estate of some kind, under the will. It is an estate for life in the whole tract, subject alone to the right of the son during that time. What was the character of that right? It was not vendible or transferable. It could not have been an interest in the land, or it could have been alienated; and upon his death would have descended, and diminished to that extent the interest of his mother. It must have been, therefore, a mere personal privilege, a trust confided to him by the testator, which gave him, during his mother's life, an interest in the profits, which he would have forfeited during his lifetime, by a refusal to fulfil the trust, and which ceased and determined by its own nature, upon his death.

It appears that the father-in-law of William W. Arnold, after the marriage with his daughter, made several advancements to his son-in-law in money, taking, however, on each occasion, his promissory notes for the amount advanced. In his last illness he executed one note embracing the whole amount of the sums previously advanced, and a mortgage to secure its payment. This debt has been transferred by the father to a trustee for the benefit of his daughter, the widow of W. W. Arnold.

It is now contended the transaction is fraudulent as to creditors, and should be so regarded. We perceive no indications of fraud, nor any reason why it should not

ARNOLD'S HEIRS,
&c.
vs
ARNOLD'S AD'R.
&c.

A father-in-law gave into the possession of a son-in-law, sums of money at different times, and afterwards took a note for the whole amount and a mortgage to secure it, which, upon the death of the son-in-law he transferred to a trustee for the benefit of the daughter.—Held that it was not fraudulent.

be sustained. The father, instead of making absolute advancements to his son-in-law, which he would have had no right to reclaim, retained by taking notes for the re-payment of the sums advanced, complete control over the amount. He occupied the attitude of any other creditor; and although he may not have intended, under certain circumstances, to enforce the payment of the notes, still he had the power to do so, if he thought proper to exercise it. By requiring the execution of the notes, he evinced his intention not to make an absolute gift at the time, but to hold its disposition in his own hands, to be regulated by future contingencies. The decree of the Court sustaining the mortgage, and the debt secured by it, is therefore, correct.

*Personal property which is disposed of by the remainder man, is to the prejudice of the tenant for life, not to the prejudice of the personal representatives of the testator.*

As by the will of John Arnold, the furniture in the house, and stock and personal property on the farm, were bequeathed to his wife during her life, so far as W. W. Arnold may have disposed of the same, and converted it to his own use, beyond his interest under the will, it creates a debt against his estate in favor of his mother, and is not a debt against him as the executor of his father. The Court below was, therefore, right in decreeing, that so far as he received any part of his father's estate, and held it as one of the executors, it was a preferred debt against his estate, but so far as he disposed of the estate devised to his mother for life, it did not create a debt which was entitled to any preference.

The other questions which have been made, cannot be considered under the decree rendered. That decree merely directs the commissioner to ascertain and report certain facts, but decides nothing in relation to the matters upon which these questions arise, and consequently, the Court has the power, when the commissioner reports, to make such decree as may seem equitable. It would, therefore, be premature for this Court to pass upon these questions at this time. We would suggest, however, that Thomson Arnold, according to the provisions of his father's will, is not bound to make an election until after the death of his mother, whether or not he will retain at its value, the land now in his possession.

The Court below having decided that the widow of Wm. W. Arnold was entitled to dower in the tract of land devised to his mother during her life, the decree is reversed and cause remanded for decree and further proceedings in conformity with this opinion.

*Caperton* for plaintiffs; *Turner* for defendants.

